**Reversed and Remanded and Majority and Dissenting Opinions filed December 10, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00683-CR

---

**VICTORIA RANAE BLUE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Lee County, Texas**
**Trial Court Cause No. 8733**

---

### MAJORITY OPINION

Appellant raises two issues in this appeal from a conviction for possession of a controlled substance. First, she argues that her conviction must be reversed because the trial court abused its discretion when it denied her motion to suppress. Second, she argues that, even if her conviction is not reversed, the judgment must be modified because of a clerical error in the description of the offense. We overrule the first issue and do not address the second issue. As we explain more fully below, the sentence is void because the trial court assessed a punishment that is outside the

statutory range. We therefore reverse the trial court's judgment and remand for a new hearing on punishment only.

## BACKGROUND

This case is ultimately about drugs, but it begins with a homicide.

One evening, five men approached appellant's home with the intention of robbing her husband. Appellant's husband was a known drug dealer, and he had been robbed two months earlier by some of these very same men. One of the five men had not participated in that earlier robbery, and as soon as that man arrived at appellant's home, he began discharging a firearm into the residence. This man's shooting undermined the plans of the other four men, which caused the robbery to be unsuccessful.

Appellant's husband suffered fatal injuries during the course of the attempted robbery. Appellant and her children, who had also been at home at that time, managed to escape unharmed.

Appellant was distraught during the immediate aftermath of the attempted robbery. When police arrived on scene, she was visibly upset, crying, and mourning the loss of her husband.

Several hours after the first officers arrived, appellant signed a written form in which she consented to have her home searched. Police thereupon found more than six thousand dollars in cash, as well as nearly one-half kilogram of cocaine.

Appellant was eventually charged with the possession of that cocaine, which she sought to suppress by arguing that her consent had been involuntary and that the search of her home had been conducted in violation of the Fourth Amendment. Two witnesses testified at the hearing on the motion to suppress: a captain from the sheriff's office, who claimed that appellant had wanted to assist in the investigation;

and appellant herself, who claimed that she had no recollection of signing the consent form.

The trial court rejected appellant's claim and issued a ruling denying her motion to suppress. Appellant then pleaded guilty to a reduced charge and filed this appeal, which was transferred to us from the Third Court of Appeals by order of the Texas Supreme Court.

## MOTION TO SUPPRESS

When, as here, a defendant alleges that evidence was obtained in violation of the Fourth Amendment, the defendant bears the initial burden of rebutting the presumption of proper police conduct. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The defendant can satisfy this burden by producing some evidence that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this initial showing, the burden of proof shifts to the State, which must then establish that there actually was a warrant or that the search or seizure was reasonable. *Id.*

At the hearing on the motion to suppress, the State acknowledged that appellant's home was searched without the benefit of a search warrant. However, the State argued that the search was reasonable because it was performed with appellant's consent.

Consent is a recognized exception to the Fourth Amendment's warrant requirement. *See Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). But for this exception to apply, the State must show with clear and convincing evidence that the consent was given voluntarily. *Id.* This burden requires the State to show that the consent was not the result of duress or coercion. *Id.* When deciding whether this burden was met, we examine the totality of the circumstances. *Id.* at 686–87.

Several factors may be considered when deciding whether consent was given voluntarily, including the maturity or youth of the defendant, her education and intelligence, any constitutional advice that was given to her, the length of any detention, the repetitiveness of any questioning, and any use of physical punishment. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). A court may also consider whether the defendant was warned that her consent was not required. *See Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985).

Because issues of consent are necessarily fact-intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *See Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). This means that the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.* Although we defer to the trial court's determination of historical facts, we review de novo any application of law to fact questions that do not turn on an evaluation of credibility and demeanor. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000).

The captain in this case testified that when he initially arrived on scene, appellant was upset and crying because she had just lost her husband. The captain said that appellant still appeared to be mentally distraught when she was presented with the consent form, which was nearly five hours after the shooting, but the captain opined that appellant was not so distraught as to be unable to give consent. The captain explained that appellant actually wanted to be helpful and assist in the investigation of her husband's homicide.

An officer's body camera recorded the moment in which appellant was presented with the consent form. The body camera video, which was admitted into evidence at the hearing on the motion to suppress, shows that appellant was not

crying when she was given the consent form. The video also shows that appellant was orally advised about the scope of the proposed search, and that she had the right to refuse her consent. Appellant signed the consent form without asking any questions.

The captain was a witness to appellant's signature. He testified that at the time of her signing, appellant had not been "threatened, forced, coerced, or anything along those lines." He also added that appellant was never a suspect in her husband's homicide, that she had not been handcuffed, and that she had been free to leave.

Based on the totality of the circumstances, this evidence supports the trial court's implied finding that appellant voluntarily consented to the search of her home.

Appellant responds that her consent could not have been voluntary because she was in such a state of shock after the loss of her husband that she could not comprehend the form, and because she testified directly that she did not even remember signing the form. But the trial court was not required to credit these claims. Based on appellant's composure and demeanor in the body camera video, the trial court could have reasonably concluded that appellant was not so emotionally disturbed as to be unable to comprehend the contents of the form or the oral explanation of the form that had been given to her. Also, appellant testified herself that she had no recollection of being threatened or coerced, and that she actually wanted to assist law enforcement in finding the men who had killed her husband. Under the applicable standard of review, we must defer to the trial court's implied finding that appellant comprehended the form because, when viewed in the light most favorable to the trial court's ruling, the evidence supports that implied finding. *See Ramos v. State*, 124 S.W.3d 326, 333 (Tex. App.—Fort Worth 2003, pet. ref'd)

5

(holding that the trial court was free to disbelieve the defendant's claim that her consent was involuntary because she was in a "state of shock").

Appellant also refers to evidence that she was not permitted to use the restroom in her home while the scene was being secured, that she was barefooted, and that she was asked to remain on the premises and not talk to any family members. Even if this evidence were true, the trial court was not required to conclude from such facts that appellant's will was so overborne and her capacity for self-determination so critically impaired that her consent to search must have been involuntary. *See Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012) ("The ultimate question is whether the person's 'will has been overborne and his capacity for self-determination critically impaired' such that his consent to search must have been involuntary." (quoting *Schneckloth v. Bustamante*, 412 U.S. 218, 225–26 (1973))).

## ILLEGAL SENTENCE

Appellant was indicted for possessing at least four hundred grams of cocaine with the intent to deliver. But at the plea hearing, she pleaded guilty to a reduced charge of possessing two hundred grams or more but less than four hundred grams of cocaine with the intent to deliver. Under this reduced charge, the offense was "punishable by imprisonment in the Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000." *See* Tex. Health & Safety Code § 481.112(e).

The trial court assessed appellant's punishment at thirty years' imprisonment. When the prosecutor asked about the imposition of a fine, the trial court responded: "There is no way she is going to pay it, and I'm not going to do that."

But a fine was mandatory—even if just a nominal amount—and the trial court was required to orally pronounce the fine at the sentencing hearing. *See Saldivar v.*

6

*State*, 542 S.W.3d 43, 48 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (holding that a fine was mandatory for an offense under Section 481.112(e) of the Texas Health and Safety Code). Because the trial court failed to impose a fine, the sentence is void for being outside the statutory range of punishment. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal.").

Appellant did not object to the imposition of a void sentence, or even raise that issue on appeal, but unlike with most trial court errors that are forfeited if not timely asserted, the defendant is not required to lodge a contemporaneous objection to a void sentence. *Id.* at 806 n.6. And "any court—trial or appellate—may notice, on its own, an illegal sentence and rectify that error." *Id.* at 805. The remedy in such cases is that the defendant is entitled to a new punishment hearing. *See Lombardo v. State*, 524 S.W.3d 808, 817 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for a new hearing on punishment only.

/s/    Tracy Christopher
       Justice

Panel consists of Justices Christopher, Spain, and Poissant. (Poissant, J., dissenting). Publish — Tex. R. App. P. 47.2(b).